Belknap,  }
Nov. 4, 1913. }

## VICTOR E. HASERICK *v.* BOULIA-GORRELL CO.

Where a deed recites that the land thereby conveyed is bounded upon a street laid out by the grantor across a certain farm, the grantee is not entitled to a way by estoppel in the absence of evidence as to the extent and location of the tract over which such right is claimed.

A landowner's right of way of necessity is extinguished by the laying out of a highway which affords reasonable means of access to his premises.

A landowner is not entitled to a way by prescription across adjacent premises if his use thereof was interrupted after a period of nine years and was thereafter enjoyed only at the pleasure of the adjoining owner.

CASE, for obstructing a right of way. Trial by jury at the November term, 1907, of the superior court (*Stone*, J., presiding) and verdict for the plaintiff. Transferred from the November term, 1912, of the superior court by *Pike*, J.

The plaintiff introduced in evidence three deeds from the Winnipiseogee Lake Cotton and Woolen Manufacturing Company to Ernest C. Haserick. The first is dated in 1853 and purports to convey a lot of land in Lake Village, "beginning at a stake and stone standing on the westerly side of a new street called Vernon street laid out by said company across their land called the Folsom farm, thence westerly at right angles to said street six rods to the top of the bank of Round bay (so called); thence on said bank northwesterly about six rods to a stake and stones; thence easterly on a course parallel to the first mentioned line to a stake and stones at said street; and thence on said street five rods to the bound begun at." This deed was not recorded until 1897. The second deed is dated in 1856 and describes a lot of land situated in Lake Village, "beginning at a stake and stones standing on the westerly side of a new street called Vernon street laid out by said company across their land called the Folsom farm, thence westerly at right angles to said street six rods to the top of the bank of Round bay (so called); thence on said bank northwesterly one hundred ten feet to a stake and stones; thence easterly on a course parallel to the first mentioned line to a stake and stones at said street; and thence on said street one hundred ten feet to the bound begun at." This deed was recorded in 1857. The description of the third lot (conveyed in 1860) is not important. The plaintiff is the successor in title to the grantee, and the defendant to the grantor. The plaintiff claimed

that the deed of 1853 conveyed a lot adjoining that conveyed in 1856 on the southeast.

At the time the deeds were given there was a traveled way past the premises and across land of the Lake Company to the bridge in Lake Village. The Hasericks used this way more or less and called it Vernon street. No one else called it by that name. In 1865, the occupants of the land through which the way ran built a fence across it and maintained a gate which they always closed at night and on Sundays. They also erected an office building which completely obstructed the way, and various other obstructions have been placed in it from time to time. A convenient public highway leading to the plaintiff's premises was laid out in 1859.

There was no evidence that the plaintiff's ancestors ever claimed to own the land now claimed under the deed of 1853. Ernest Haserick had a building upon a portion of it for some years, but by what right did not appear from the plaintiff's evidence. He also did some teaming across it, as he did across adjoining land of the Lake Company. About 1856, he went to live on the lot conveyed in 1856 and built a fence along its southeasterly side. This was burned in 1903 and was replaced by a wire fence. The disputed lot was never fenced. The Hasericks were away from the premises from 1874 until 1889, when they returned to reside upon the premises conveyed in 1856. During their absence the Lake Company placed prominent stone bounds at each end of the line now claimed by the defendant. The Hasericks never objected to these bounds, after finding them. A plan of the lake region made by the Lake Company in 1858 shows an unnamed street running where the plaintiff now claims a way, and the county map of 1859 shows a like street. On this map a part is called Vernon street and a part Mill street.

At the close of the plaintiff's evidence the defendant's motion for a nonsuit was denied, subject to exception.

*Owen & Veazey* and *Oscar L. Young* (*Mr. Young* orally), for the plaintiff.

*Charles B. Hibbard* and *Cox & Fowler* (*Mr. Hibbard* orally), for the defendant.

PEASLEE, J. The plaintiff claims a right of way as appurtenant to two lots of land, one deeded to his ancestor in title in 1856, as to the location of which there is no controversy, and another which he

claims by virtue of a deed dated 1853. There was no evidence where this earlier lot was located, nor of any occupancy of any land under the deed. The defendant's claim was that the deed of 1853 was of a part of the land covered by the later deed, and the description and the subsequent conduct of the parties tend strongly to support this theory. But as the plaintiff has failed to show its location, no further consideration of the question is necessary.

The deed of 1856 recited that the land sold bounded upon "a new street called Vernon street laid out by said company across their land called the Folsom farm." The evidence tended to show that at this time there was a traveled way leading past the granted premises, on toward a bridge across the river in Lake Village. There was then no public highway leading to the plaintiff's land, but one was laid out in 1859. A plan of the locality made by the Lake Company in 1858 shows a street along the way as claimed by the plaintiff. There was no evidence that this plan was ever published or recorded. The plaintiff and his ancestors have used the way more or less continuously since 1856; but in 1865 the occupant of the land nearer Lake Village fenced up the way, maintained a gate which was closed except during the working time at the mills situated there, and also erected a building across the way. Many other obstructions were erected at later dates.

Upon this evidence the defendant's motion for a nonsuit should have been granted. No way by estoppel is shown, because there is no evidence of the extent of "the Folsom farm." The only representation in the deed was that the grantor had laid out a street across that tract. Assuming that this is a sufficient representation of the existence of the way to raise an estoppel, its application to the *locus* is not shown. To take any benefit from the recital, the plaintiff must show that the way he claims comes within that described in the deed. He has not done this, and for aught that appears in the case the Folsom farm may not extend further in an easterly direction than the line of the lot purchased by his ancestor. The plan of 1858 comes to nothing, for there is no evidence that there was any dedication of the streets shown thereon; and as it was not made until after the plaintiff's lot was sold, the purchaser could not have relied upon it.

If the way in use in 1856 was then one of necessity, it ceased to be such when the highway was laid out in 1859. *Abbott* v. *Stewartstown,* 47 N. H. 228, 230. Nor is a way by prescription shown, for

the use was interrupted in 1865, and the way has not been open since except at the pleasure of the holder of the estate over which it passes.

*Exception sustained.*

All concurred.